(Decided 27th March, 1889.)

---

DAVID M. NEWBOLD *vs.* THE PEABODY HEIGHTS COMPANY OF BALTIMORE CITY.

*Contract of Sale—Specific performance—Restrictions as to the Use of Land—Easement.*

H. the owner of a parcel of land, agreed with certain parties, who contemplated the formation of a joint-stock improvement company, of which H. was to be a large stockholder, to execute a lease of such land, save a part reserved for his own use. This agreement was dated the 20th of September, 1870, and stipulated to the effect that reference should be made to a certain memorandum appended thereto, dated the 13th of September, 1870, which contained respecting the joint-stock company to be formed, certain conditions and restrictions in regard to the character, location and

uses of the buildings to be erected.    The company contemplated was duly incorporated, and on the 14th of October, 1870, a lease was executed by H. to the company, but without any special reference to the preceding agreement or memorandum.    The lease was placed in escrow until certain conditions were performed, and in the meantime, on the 19th of October, 1870, H. and the company executed, under hand and seal, an agreement supplemental to the lease, and to be considered in connection therewith, covenanting that the original agreement of sale, dated the 20th of September, 1870, with the memorandum attached thereto, should be binding upon them and their assigns, so that the covenants, requirements,. and restrictions should be fully complied with and carried out as if they had been embodied in the lease.    On a bill filed by the company for the specific performance of a contract of sale for a part of said land, whereby the plaintiff agreed to convey to the defendant a good and sufficient title in fee-simple, free and discharged of all restrictions and incumbrances, it was HELD:

That the defendant having acquired notice of these covenants and restrictions, would be bound by them, although they were not actually incorporated in the lease, and the plaintiff was not entitled to have the contract of sale specifically enforced, not being able to make a title to the land sold to the defendant, free, clear, and discharged of the restrictions and conditions imposed as to the mode of improvement and the use of the property.

Whoever purchases land upon which a former vendor or lessor has imposed an easement, charge, or restriction in the manner of its use, such as would be enforced by a Court of equity as against his vendee or lessee, the party purchasing the land with notice will take it subject to such easement, charge, or restriction, however created.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed for the specific performance of a contract of purchase of certain real estate. The Peabody Heights Company, the plaintiff in the case, is a land improvement company, organized for the purchase, improvement and sale or lease of real estate.    In June, 1888, it sold to the defendant a parcel of ground formerly in Baltimore County, but now within the limits of the City of Baltimore as extended.

By the contract of sale the plaintiff agreed to make
to the defendant a good and sufficient title in fee sim-
ple, free and discharged of all restrictions and incum-
brances. To the title offered to be conveyed by the
plaintiff the defendant objects, upon the ground that
such title would be subject to certain restrictive cove-
nants and conditions of which he has acquired notice
since the time of the contract of purchase.

It appears that William Holmes, since deceased,
being the owner of a parcel of land called "Lillien-
dale," containing about 36 acres, lying in that por-
tion of Baltimore County recently annexed to the City
of Baltimore, agreed with certain parties, who at the
time contemplated the formation of a joint stock im-
provement company, (of which Holmes was to be a
large stockholder,) to execute a lease of such land,
with certain conditions for the redemption of the ground
rents, with the exception of a block or square of 400
feet front, which he reserved for his own use and pur-
poses, and upon which he intended to build a resi-
dence. This agreement bears date the 20th of Sep-
tember, 1870; and in it there is a stipulation to the
effect, that reference shall be made to a certain mem-
orandum appended thereto, dated the 13th of Sept.,
1870, for the better explanation of the agreement for
the lease, and for further details in reference thereto,
and especially as to the joint stock company referred
to in the agreement; and which memorandum, as
stated, had been approved and agreed upon by the
parties *as the basis* of the agreement for the lease to
be thereafter executed to the company to be formed.

The memorandum referred to had been made by Mr.
Geo. W. Tinges, a real estate agent acting for Holmes;
and among other things it contained respecting the
joint stock company to be formed, were certain condi-
tions and restrictions under the head of "Plan of Com-

pany," and "By-laws," which were "1. That no land
should be sold or leased without a pledge to build
speedily, and the designs of buildings to be approved
by the directors: 2. Buildings to be 20 feet back of
building line, and front to be ornamented with shrub-
bery and flowers: 3. No nuisance, factories, lager
beer saloons, &c. to be permitted. Clause in deed to
this effect. 4. To regulate other proceedings." The
company, contemplated by. the agreement to which
this memorandum was appended, was duly incorpo-
rated on the 1st of October, 1870. The lease of the
land was executed by Holmes to the company on the
14th of October, 1870, but without any special refer-
ence to the preceding agreement or memorandum.
The lease was placed in escrow, until certain condi-
tions were performed; and in the meantime, that is
to say, on the 19th of October, 1870, Holmes and the
company executed, under hand and seal, what would
appear to be an agreement supplemental to the lease,
and to be considered in connection therewith. By
this latter or supplemental agreement it is recited and
agreed as follows: "Whereas, there were matters of
detail agreed upon, *as the basis of the purchase and sale
of the property* aforesaid, which were contained in the
agreement or contract of sale first above referred to,
but which could not be conveniently set forth in the
lease; and therefore the said William Holmes and the
'Peabody Heights Company,' do hereby covenant with
each other, that the agreement or contract of sale,
*with the memorandum attached thereto,* dated 20th Sept.,
1870, (and to which this agreement is now appended,)
*shall be binding upon them and their assigns,* so that the
covenants, requirements, restrictions, regulations and
reservations contained therein shall be fully complied
with and carried out, as if they had been embodied in
the lease of the property therein referred to, or as if

the said Peabody Heights Company had been one of
the original contracting parties."

It is shown that Holmes, in his life-time, and those
representing his estate since his death, have conveyed
portions of the property embraced in the lease to the
company in extinguishment of the ground rents, and
that in none of such conveyances has any reference
been made to the restrictions and conditions referred
to in the agreement of the 19th of October, 1870. It
is also shown that the plaintiff company has conveyed
portions of the land acquired from Holmes to third
persons, without making any reference to such restric-
tions or conditions, except in one instance, that of a
conveyance to Mrs. Polk, dated in 1872, which was
made subject to the rules and regulations of the Pea-
body Heights Company, in regard to the character,
location, and uses of the buildings upon the lot con-
veyed. The lease was duly recorded; and it appears
that the agreements, to which reference has been made,
were filed as exhibits by the company in an equity
proceeding in Baltimore County Circuit Court, in re-
spect to the land, and that they have been recorded as
part of that proceeding.

The defendant, by his answer, while admitting some
of the allegations of the bill, puts the plaintiff upon
proof of others; and then avers that "he is advised that
not only the owners of the square of ground retained by
Holmes, as mentioned in the bill, but that also all
present owners of any part of the *entire* ground leased
by Holmes to the plaintiff, and by it subsequently sold
or leased, would have the right to compel the observ-
ance of the covenants, restrictions, and conditions,
referred to in the bill, by any owner of the property sold
to him," &c. Proof was taken, and a decree passed,
*pro forma*, against the defendant, and he has appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*John J. Dobler,* for the appellant.

The restrictions mentioned in the by-laws of the company, at the time "Lilliendale" was leased by William Holmes, have created easements or servitudes in favor of the ground retained by Holmes. *Halle vs. Newbold,* 69 *Md.,* 265; *Thruston vs. Minke & Humbird,* 32 *Md.,* 487; *Whitney vs. Union Railway Co.,* 11 *Gray,* 359; *Trustees vs. Lynch,* 70 *New York,* 440; *Clark vs. Martin,* 49 *Penna.,* 289.

Subsequent purchasers from the company, as well as the present owners of the ground reserved by Holmes, can enforce, in equity, these restrictions against each other. *Parker, et al. vs. Nightingale,* 6 *Allen,* 341; *Barrow vs. Richard, et al.,* 8 *Paige,* 351.

It is not competent for the company, by an amendment of its by-laws, to modify the rights of Holmes and his successors, or the rights of its vendees prior to such amendment. *Eastwood vs. Lever,* 33 *Law Journal, N. S. Ch.,* 355; *Piggott vs. Stratton,* 5 *De G., F. & Jones,* 33.

Restrictions once established, remain enforceable, and constitute a valid objection to the title even if it is not likely that a purchaser would care to violate them, or if the conditions surrounding the property should have so changed as to make a compliance therewith no longer desirable. *Tulk vs. Moxhay,* 11 *Beav.,* 571; *In re Higgins & Hitchman's Contract,* 51 *Law Journal, N. S. Ch.,* 772.

The rights of the owners of the Holmes lot and of the lots heretofore sold by the company, to the easements or servitudes above mentioned, constitute encumbrances upon the legal title to its remaining property. *Kramer vs. Carter,* 136 *Mass.,* 504; *Washburn on Easements,* (4th Ed.,) 115, 116; *Washburn on Easements,* (3d Ed.,) 97-107.

*John V. L. Findlay,* for the appellee.

ALVEY, C. J., after stating the case as above reported, delivered the opinion of the Court.

The question is, whether the agreements of the 20th of September and the 19th of October, 1870, contain such restrictive covenants and conditions as will bind the parties to those contracts, and those claiming title through or under them; for if so, there would appear to be ground for the objection taken by the defendant. That the covenants and conditions referred to were not actually incorporated in the lease can make no difference, as to the effect that they may have upon the parties holding property embraced by the lease. Nor can it make any difference that the memorandum of the plan of the organization of the plaintiff company, and the conditions upon which such company was to hold and dispose of the property leased, was adopted only by reference to such memorandum in the subsequent agreements, and that the agreements were not recorded as parts of the lease. *Noonan vs. Lee,* 2 *Black,* 499, 504; *Nicholson vs. Rose,* 4 *D. & J.,* 10. The covenant contained in the agreement of the 19th of October is very explicit, that the preceding agreement, with the memorandum attached, should be binding upon the parties *and their assigns.* They stipulate "that the covenants, requirements, restrictions, regulations and reservations contained therein *shall be fully complied with and carried out, as if they had been embodied in the lease of the property therein referred to,* or as if the said Peabody Heights Company had been one of the original contracting parties." The reason and policy for the adoption of such conditions and restrictions are manifest; and that Mr. Holmes, the lessor of the property, attached great importance to the plan of improvement, and the restrictions and conditions em-

bodied in the memorandum, is made apparent from the fact of his requiring the execution of the agreement of the 19th of October. It was his purpose, by that agreement, to require that the Peabody Heights Company should be bound by the conditions and restrictions referred to as well as the individuals who originally contracted for the land; and that the lease, though making no reference to the preceding agreements, should not be construed as a waiver on his part of the conditions and restrictions specified in the memorandum. The covenant, and the conditions and restrictions contemplated by it, were in all respects legal, and such as the owner of land has a right to impose. And being so, he and those holding under him, have the right to insist upon the enforcement of the covenant, not only as against the Peabody Heights Company, but as against every other person, acquiring right or title under that company with notice of the covenant.

It may be very true that the covenant is not of a character to *run with the land,* in the strict legal technical sense of those terms; but if it be of a character to create a right and an equity in favor of the vendor or lessor, and those claiming in his right, as against those holding and occupying the land, a Court of equity will assume jurisdiction and administer relief. This is a well settled principle, and it has been considered and applied by this Court in two recent cases,—the case of *Thruston vs. Minke,* 32 *Md.,* 487, and *Halle vs. Newbold,* 69 *Md.,* 265, though in respect to facts somewhat different from those of the present case. But, in both of those cases, the general principle of equity was acted on and fully adopted, that a restrictive covenant entered into between a vendor and vendee, or lessor and lessee, in respect to the manner of using the property, would be enforced by a Court of equity, as against the vendee or lessee, and his assigns, without respect to the ques-

tion as to whether the covenant did or did not, in a legal sense, run with the land. The relief may be furnished either by way of injunction, or upon application for specific performance, according to the circumstances of the case calling for the exercise of equitable jurisdiction.

In the leading case upon this subject, that of *Tulk vs. Moxhay*, 2 *Phill.*, 774, it was held that a covenant between a vendor and purchaser, on the sale of land, that the purchaser and his assigns should use or abstain from using the land in a particular way, would be enforced in equity against all subsequent purchasers with notice, independently of the question whether it be one which ran with the land so as to be binding upon subsequent purchasers *at law*. In that case the principle, as applied by Courts of equity, is stated by Lord Chancellor COTTENHAM with such admirable clearness that we cannot do better than to quote his language. He said: "Here there is no question about the contract; the owner of certain houses in the Square sells the land adjoining, with a covenant from the purchaser not to use it for any other purpose than as a Square Garden. And it is now contended, not that the vendee could violate that contract, but that he might sell the piece of land, and that the purchaser from him may violate it, without this Court having any power to interfere. If that were so, it would be impossible for an owner of land to sell part of it without incurring the risk of rendering what he retains worthless. It is said that, the covenant being one which does not run with the land, this Court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased. Of course, the price would be affected

by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken. That the question does not depend upon whether the covenant runs with the land, is evident from this, that if there was a mere agreement and no covenant, this Court would enforce it against a party purchasing with notice of it; for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

The principle thus clearly stated has been applied in a great variety of cases of restrictive covenants and agreements, both in the English and American Courts; and they all concur in holding that whoever purchases land upon which a former vendor or lessor has imposed an easement, charge, or restriction in the manner of its use, such as would be enforced by a Court of equity as against his vendee or lessee, the party purchasing the land with notice, will take it subject to such easement, charge, or restriction, however created. *De Mattos vs. Gibson,* 4 *De G. & J.,* 282; *Wilson vs. Hart,* 1 *Ch. App.,* 463; *Catt vs. Tourle,* 4 *Ch. App.,* 654; *Whitney vs. Union Railway Co.,* 11 *Gray,* 329; *Trustees vs. Lynch,* 70 *N. Y.,* 440.

The interest in Holmes for imposing the restrictions and conditions specified in the memorandum are very apparent. He reserved to himself and for his own use, as the site for a residence, a block or square of the parcel of land owned by him, all of which, except the square reserved, was embraced in the lease. He manifestly intended his own property to be benefited by the restrictions imposed upon that leased to the company; and, as we have seen, those restrictions are

of a character that will be enforced by a Court of equity.

It is, however, insisted that there has been a waiver of the restrictive conditions contained in the memorandum of the plan of organization referred to in the agreements, by Holmes in his life-time, by the making of certain deeds for portions of the land embraced in the lease, without reference to such restrictive conditions, and, as stockholder and director in the company, by acquiescence in the making of certain conveyances by the corporation to purchasers without any such reference. But, as the case is now presented, it would be a little difficult to see any sufficient ground for concluding that there had been any such acts of waiver on the part of Holmes, as would bring the case within the operation of the principle of waiver, as established by the authorities in such cases. *German vs. Chapman*, 7 *Ch. Div.*, 271, 281. We forbear however the determination of that question, as the estate of Holmes has no one before the Court to represent it, and there being no other parties to the cause than the immediate parties to the contract of sale sought to be enforced. If those who are legally interested in the enforcement of the restrictive conditions think proper to waive them, all difficulty may be easily removed out of the way of making a good title to the defendant; but without such waiver it would appear that the plaintiff cannot make a title of the land sold to the defendant free, clear and discharged of the covenant and the restrictive conditions thereby imposed, as to the mode of improvement and the use of the property. *Halle vs. Newbold, supra; In re Higgins and Hitchman's Contract*, 51 *L. J. Ch.*, 772.

It follows that the decree of the Court below must be reversed and the bill dismissed.

*Decree reversed.*

(Decided 27th March, 1889.)