GIACOMA v. YOCHIM ET AL.

(January 27, 1930. Opinion and Decree.)
(March 10, 1930. Rehearing Refused.)
(May 5, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Theodore Cotonio, of New Orleans, attorney for plaintiff, appellant.

Dart & Dart and H. Grady Price, of New Orleans, attorneys for defendants, appellees.

WESTERFIELD, J. This is a suit by a prospective purchaser against a real estate agent and the owner of the property plaintiff intended to purchase, for the return of a deposit in the sum of $950 or 10 per cent of the purchase price.

The defendants filed separate answers. Yochim, the real estate agent, admitted having received the deposit. Mrs. Bussey, the owner of the property, avers her willingness to convey to plaintiff, and by way of reconvention asks for judgment against plaintiff decreeing specific performance of the agreement to purchase the property.

There was judgment below dismissing plaintiff's demand as to both defendants and in favor of Mrs. Bussey, plaintiff in reconvention, ordering specific performance of the contract and condemning plaintiff to pay to defendant the sum of $9,500, the purchase price mentioned in the agreement of sale, less the amount of the deposit.

Plaintiff justified his refusal to accept title to the property on a number of grounds: First, that Mrs. Bussey at the time he agreed to buy the property was not the owner thereof; second, that the title to the property was incumbered with certain building restrictions unknown to him at the time he signed the agreement of sale; and, third, that the property is owned by the Milne Asylum for Destitute Orphan Boys which acquired it about 100 years ago under the will of Alexander Milne, and its title has never been legally divested by plaintiff's authors in title.

As to the first reason advanced by plaintiff for refusing to accept title it is based upon the fact that when the plaintiff signed the agreement Mrs. Bussey was represented by Yochim as her agent, and Mrs. Bussey had not yet taken title to the property, she having only recently agreed to its purchase through Yochim. In other words, Yochim induced her to purchase the property and induced plaintiff to buy it at a small advance before Mrs. Bussey got possession of it. However, Mrs. Bussey was the owner of the property long before any dispute arose over the title. This objection is without merit. The sale of the property of another is null under the familiar provision of our Code (Vickers vs. Block, 31 La. Ann. 672), but there is a difference between a promise of sale and a sale. See Codifer vs. Holdsworth, 7 La. App. 395.

The second objection is more serious. In the act of sale by which Mrs. Bussey acquired the property, of date July 25, 1925, passed before W. Morgan Curley, notary public, there appears the following:

"The party of the second part further agrees that there shall not be erected on this property any residence to cost less than Three Thousand ($3,000.00) Dollars; nor any saloon, noxious or offensive establishment whatsoever; that no house shall be built or set nearer to the front property line of the lots than fifteen feet; that no lots are to be sold to negroes or colored people."

The evidence is to the effect that plaintiff was unaware of these restrictions in the title at the time of his agreement to purchase the property and his deposit of

10 per cent of the purchase price. Defendant, however, insists that these restrictions in Mrs. Bussey's title may be ignored by any purchaser for the reason that they are absolute nullities. . Her counsel argues that, since there is no time limit mentioned in the restrictions referred to, they must be regarded as purporting to have effect in perpetuity, an illegal restriction upon the alienability of property which will not be tolerated by our law. In support of this contention we are referred to Female Orphan Soc. vs. Young Men's Christian Association, 119 La. 278, 44 So. 15, 16, 12 Ann. Cas. 811, where the court, in speaking of similar restrictions, said:

"It is clear, then, that, under our law, an ownership, without the potestas alienandi being vested in some one, is an impossibility—finds no place in our Code's scheme of the tenure of property—and is therefore impliedly forbidden. Hence the conclusion is inevitable that a condition of inalienability contravenes the provisions of our Code regulating the tenure of property, and is therefore 'contrary to law,' and must be reputed not written."

In Queensborough Land Co. vs. Cazeaux, 136 La. 724, 67 So. 641, 645, L. R. A. 1916B, 1201, Ann. Cas. 1915D, 1248, it was held that a condition in an act of sale for the benefit of the vendor and its other vendees, that the vendee should not sell the property to a negro during a period of 25 years from the date of the act of sale, was not contrary to public policy and was, therefore enforceable, because "no one has ever doubted the validity of such a condition, if merely temporary."

In the case at bar there is no stipulation which, if given effect, would render the property wholly inalienable, and on the other hand there is no limitation of the partial inalienability which the stipulation imposes. In the cited case, supra, we find the following:

"The right to alienate is but one of the constituent elements of the right to dispose of; in the same way that the ownership may be subdivided, and the usus, and the fructus and the abusus may be subdivided, so may this right to alienate, a subdivision of the abusus, be, in turn, subdivided. And that is what the said stipulation in question in this case amounts to in effect. By it the right to alienate is subdivided and only a part of it is transferred to Cazeaux. There is withheld from him that part of the right to alienate by which, if he had acquired the full right to alienate, he would. have been enabled to sell to a negro. This right thus withheld from him is part of the ownership; a ,dismemberment of it; just as the usus is, or a dismemberment of it would be; or the usufruct is, or a dismemberment of it would be; or the abusus is, or any other dismemberment of it would be."

Article 2515 of the Civil Code reads as follows:

"If the servitudes be of such importance that there is cause to presume that the buyer would not have contracted, if he had been aware of the incumbrance, he may claim the canceling of the contract, should he not prefer to have an indemnification."

In the case of Shea & McGuire vs. Evans, where a similar restriction in a deed was under consideration, the Court of Appeal of Maryland, in a well-considered case, reported in 72 A. 600, 601 (109 Md. 229), said:

"In Gill vs. Wells, 59 Md. 492, Judge Miller said: 'It is a principle, obviously just, in the law relating to the specific performance of contracts that the vendee is entitled to have that for which he contracts, before he can be compelled to part with the consideration he agreed to pay. He is not bound to take an estate fettered with incumbrances, by which he may be

subjected to litigation to procure his title; and, in a contract such as is sought to be enforced in this case, the vendee is not bound to accept anything short of an unincumbered legal estate in fee, the title to which is free from reasonable doubt.' Or as said in Dobbs vs. Norcross, 24 N. J. Eq. 327, and quoted with approval in Gill v. Wells: 'He shall have a title which shall enable him, not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value.' That restrictions such as these would prevent a court of equity from decreeing the specific performance of a contract for sale of lands subject to them is shown by the decisions in Halle v. Newbold, 69 Md. 265, 14 A. 662; Newbold v. Peabody Heights Co., 70 Md. 493, 17 A. 372, 3 L. R. A. 579; Peabody Heights Co. v. Willsch, 82 Md. 186, 32 A. 386, 1077, 36 L. R. A. 393, and others that might be cited."

We do not find it necessary in this case to determine whether the partial restriction upon the alienability of the property is valid or otherwise. It is sufficient to observe that the title tendered plaintiff is obviously suggestive of litigation, and plaintiff cannot be compelled to accept a litigious title. Couret vs. Hopkins, 13 Orleans App. 161; Heffern vs. McWilliams, 13 Orleans App. 489.

The view we take of this objection to the title makes it unnecessary to discuss the other objections.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of plaintiff, Carrado Giacoma, and against the defendants, J. C. Yochim and Mrs. Marie Straub, wife of William Bussey, in solido, in the full sum of $950, with legal interest thereon from November 3, 1925, and all costs of this suit.