51 So.2d 121 (1951)
STAUSS
v.
KOBER.
No. 19591.
Court of Appeal of Louisiana, Orleans.
March 12, 1951.
Dresner & Dresner, New Orleans, for plaintiff-appellant.
Jacob J. Amato, Gretna, for defendantsappellees.
JANVIER, Judge.
This is an appeal by plaintiff, Clarence E. Stauss, a real estate agent, from a judgment dismissing his suit for a commission against Fred C. Kober and his wife, Cecile W. Kober, who signed an agreement to buy certain property but who, for reasons we shall later discuss, refused to make the required deposit and refused to accept title to the property.
The defendants denied liability, averred that they refused to accept title because there were certain objectionable title restrictions which were not disclosed to them and, by reconventional demand, prayed for judgment against plaintiff for $250 as an attorney's fee, made necessary by plaintiff's suit.
On September 24, 1949, Mr. and Mrs. Kober signed a written offer to buy the property in question for $14,500. Stauss, the plaintiff, was the real estate agent and the offer contained a stipulation fixing the agent's commission at $680, and further provided that should either party fail to comply with the terms of the agreement, that party should be liable for the said commission *122 and for all fees and costs incurred in enforcing collection. The offer was accepted by the owners of the property. The agreement contained no reference to any restrictions which might appear in the title, and, so far as the record shows, the defendants had no knowledge that there were any such title restrictions. However, upon examination of the title, it appeared that there were title restrictions which prohibited the erection of any residence costing less than $2000; providing that no house should be built nearer to the front property line than fifteen (15) feet; that no saloon, noxious, or offensive establishments should be erected on the property, and that no lots should be sold to negroes or colored people.
When the defendants who, in the written agreement, had bound themselves to make the deposit and to purchase the property refused to do either, this suit was filed.
Apparently, no attempt has been made by the prospective vendors either to enforce specific performance or to compel the defendants to make and forfeit the deposit, and the sole question now before us is whether, by refusing to take title to the property, the defendants made themselves liable for the agent's commission.
Plaintiff concedes that it is well settled that ordinarily a prospective purchaser is justified in refusing to take title to property which he has agreed to buy when it appears that in the title there are undisclosed restrictions which would prevent his making unrestricted use of the property, or which might hamper him should he attempt to sell it later on.
That undisclosed title restrictions justify the rejection of title has been held in practically all jurisdictions. We ourselves so held in Williams v. Meyer, La.App., 29 So.2d 599, in which we cited John F. Couret v. Hopkins-Rhodes & Co., 13 Orleans App. 161; Giacoma v. Yochim, 13 La.App. 94, 126 So. 84; Hebert v. Vezoux's Succession, 12 La.App. 624, 126 So. 461; Bolian v. Porche, La.App., 149 So. 272.
Plaintiff, however, while conceding that the title restrictions were not disclosed and while conceding also that such undisclosed restrictions would ordinarily justify rejection of the title, asserts that where there are restrictions imposed by zoning ordinances of the City and those zoning restrictions are at least as onerous as those appearing in the title and, in fact, include those appearing in the title, then the prospective purchaser who, by the zoning ordinance, would have been restricted in the use or disposition of the property to the same extent as by the title restrictions, may not claim that the title restrictions have adversely affected his title, and is bound by his agreement to purchase. And counsel for plaintiff points to the zoning ordinances of the City, No. 11,302 C.C.S., as amended, and asserts that the restrictions imposed on the property by those ordinances are even more onerous than are the title restrictions.
Although our attention has been directed to no Louisiana decision on the subject, we think it may be assumed that, where a person agrees to purchase real estate, the use or resale of which is restricted by laws or ordinances, he will be held to have made the agreement subject to such restrictions even though he may not have been actually aware of those restrictions.
We approach the question then with a realization that the two different, though not antagonistic principles, are well settled first, that an undisclosed title restriction, which would hamper the purchaser in the use of his property and might reduce his opportunity to sell it, justifies rejection of the title; and second, that a restriction which results from a public statute or ordinance, even though actually unknown to the prospective purchaser, would not justify his rejection of the title.
We repeat again that the sole question is whether the fact that there is a public statute or ordinance, which is at least as onerous as the title restrictions, prevents the prospective purchaser from contending that he is relieved from his obligation to buy by reason of the presence of undisclosed title restrictions.
The conclusion which we have reached on this question makes it unnecessary that we determine whether the zoning restrictions are as onerous as are the title restrictions. But for a complete understanding *123 of the entire controversy, we deem it advisable that there be considered the restrictions set forth by the zoning ordinance. We are told in the two briefs of counsel that the zoning ordinance, under which the particular property is classified as B Residential, imposes, among others with which we are not concerned, the following restrictions: That no building or premises shall be used and no building shall be hereafter erected or structurally altered, except for certain purposes. It is further provided that there must be a front yard or setback of not less than fifteen feet "to the front line of the building." That, under the zoning ordinance, no business may be conducted from the premises is evident from the fact that the property is classified as residential, and from the further fact that it is provided that, although accessory buildings may be erected, such accessory buildings are limited to those "not involving the conduct of a business."
In the zoning ordinance there are no race restrictions. Counsel for plaintiff argues that the fact that the title restrictions prohibit the sale to colored persons, while the zoning ordinance has no such provision, is not important for the reason that such restrictions are not enforceable in any event, since the Supreme Court of the United States held such restrictions unconstitutional.
Counsel for the plaintiff insist that the zoning restrictions are more onerous than are the title restrictions and that accordingly the defendants could have been forced to accept the title because any interference with the free use of the property, or with its ready sale, would have resulted not from the title restrictions but from the zoning regulations.
Counsel for plaintiff concede that this particular question has not been passed upon by any Court in Louisiana though they cite several cases from other states and say that these cases should be followed by us because they are at least persuasive.
We cannot escape the impression that there is a fatality about title restrictions which does not exist in the case of zoning regulations. The zoning ordinance itself, as amended, provides for changes in zoning regulations and for an appeal to the Zoning Board of Appeal and Adjustment. Thus where the objectionable restrictions result solely from the result of the zoning ordinance, there may always be cherished the hope that relief may be obtained by a change in the ordinance itself, or by an adjustment to be granted by the Appeal Board. No such hope can be entertained where the objectionable restriction results from the title itself.
Bull v. Burton, 227 N.Y. 101, 124 N.E 111, 113, seems to support the contention of plaintiff, for there the Court said: "A covenant in a deed by which the grantor, his representative, heirs, and assigns, are prohibited from using specified materials in erecting a building or buildings on the real property conveyed, and also prohibiting the use of the property for specified purposes, does not make the title to such property unmarketable if the grantor, his representative, heirs, and assigns, cannot use such materials in the erection of a building thereon or the property for the purposes mentioned because of some general statute or other law which is equally prohibitive."
However, it appears to us that the above statement was, to say the least, unnecessary, for the Court (Court of Appeals, New York), in spite of a vigorous dissent by three justices, held that because of the title restrictions, the prospective purchaser could not be compelled to accept the title.
In 175 A.L.R., page 1068, section 6, appears the following: "It is generally recognized that where the use of land or the location and character of buildings that may be erected thereon is restricted by covenants or other private restrictive agreements, an encumbrance on the title is created rendering it unmarketable. But, in accord with the view that existing zoning ordinances or other public restrictions upon the use of property do not in themselves render defective the title thereto, it is also held or recognized that where a private restriction does not exceed the limitations of a statute or other public regulation, it will not constitute an encumbrance where *124 the possibility of repeal or abrogation of the public regulation is remote."
We note particularly and repeat the words: "* * * where the possibility of repeal or abrogation of the public regulation is remote," and express the view that even if the general rule, as set forth above, could be applied in Louisiana there would still be the condition that the possibility of repeal or abrogation of the public regulation or law must be remote and that, where there is a special board set up to consider, at regular sessions, applications for repeal or abrogation, the possibility of change is not so remote as to justify the application of the general rule.
In Floyd v. Clark, 7 Abb.N.C. 136, a decision of the Court of Common Pleas of New York, the Court held that the title restrictions were not more onerous than were the restrictions imposed by law and said that title was not defective. Even though this Court seems to express views contrary to those entertained by us on the general legal question, we cannot avoid calling attention to the conditions which appeared in the title and which were objected to. The first was that the property could not be used as a cemetery or burying ground and, of course, it is so generally understood that property within city limits may not be used for such purposes, that possibly we ourselves would agree that such a title stipulation would not constitute a valid reason for rejecting title. The other title restriction was that there could not be erected any building which would constitute a nuisance, and of course, here again it is generally understood without title restrictions that no building may be so used as to constitute a nuisance.
Kazwell v. Reynolds, 250 Ill.App. 174, is merely authority to the effect that zoning ordinances themselves may not be pointed to as justifying rejection of a title and that prospective purchasers are presumed to know of existing regulations or ordinances.
Counsel for plaintiff have strenuously argued that our decision in Bolian v. Porche, La.App., 149 So. 272, 273, is, by implication, authority for the view that a zoning restriction which is more onerous than a title restriction deprives the prospective purchaser of the right to rely on the title restriction in rejecting the title. We cannot see anything in that decision to authorize this view. There we merely said that that case could not be "distinguished in principle" from Giacoma v. Yochim, 13 La.App. 94, 126 So. 84, nor from Hebert v. Vezoux's Succession, 12 La.App. 624, 126 So. 461, in each of which we had held that undisclosed title restrictions could render voidable a contract to purchase property. All that we meant was that since we could not distinguish in principle the Bolian case from those two other cases, we would follow the rule announced in those two other cases, but that where there is a distinguishing principle a different result may be reached. We do not find any distinguishing principle in the case at bar. If, in any of the cases cited by counsel for plaintiff, there has in reality been reached a result contrary to that arrived at by us, we merely call attention to the fact that in these common law states from which cases have been cited, the doctrine caveat emptor has application. The effect of this doctrine and the effect of the civil law rule is discussed in an article entitled "Warranty of Title or Warranty of Peaceable Possession in Louisiana," 15 T.L.R. 116.
Our conclusion is that the defendants were justified in rejecting title to the property.
Accordingly, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.