McBride, judge.
In October 1948, by written agreement, Cline B. Oubre bound himself to buy, and John A. Stassi agreed to sell to him, for the price of $8,000, the property known as 222 Rosa Avenue, Oaklawn Subdivision, Jefferson Parish. The agreement stipulated that the ground measurement was about 381/2 feet by 99 feet, “or as per title, and subject to title restrictions if any.” The prospective purchaser deposited with Stassi the sum of $800 to bind the sale.
Oubre ' brought this suit against Stassi for the return of the $800 deposit plus an equal amount as a penalty, his petition alleging that the property was encumbered by certain building restrictions, and that if he accepted title he would possibly be exposed to lawsuits brought by other owners in the subdivision because of the *599 violated building restrictions. The petition alleges that 222 Rosa Avenue is constructed on less than 6,000 square feet of ground, that the building is constructed on a lot having a frontage of less than SO feet; that the -building does not have a clearance of 5 feet from the side property line nearer lot 29, all in the teeth of the restrictions. It is not disputed that paragraph 3 of the restrictions bearing against property in Oaklawn Subdivision is: “No residential structure shall be erected or placed on any building plot which has an area of less than six thousand (6,000) square feet or a width of less than fifty (50) feet at the front building setiback line.”
The defendant excepted to the petition on the grounds of vagueness and that it disclosed no right or cause of action. Defendant also interposed a plea of estoppel, based on the fact that Oubre “bought said property according to 'visual observation.”
We see no merit in either the exceptions or the plea of estoppel; the same were properly overruled by the trial judge.
The chief defenses raised in the answer are that the violation of the restrictions was well known to plaintiff when he agreed to buy the property; that the violation has continued for a period of more than two years reckoning from its inception; and that under LSA-R.S. 9:5622 the land is forever freed from the restrictions. Defendant further contends that in no event is the plaintiff entitled to recover more than the $800 deposit.
After a trial on the merits, there was judgment below in plaintiff’s favor for $800 plus an equal amount in accordance with the agreement entered into- between the parties; defendant has taken this appeal.
The record shows that Stassi purchased lot No. 28, upon which rests 222 Rosa Avenue, on September 10, 1946. Lot 28 was described in the acquisition as having a frontage of 50 feet on Rosa Avenue, the same width in the rear, by a depth of 149 feet 6 inches. On November 3, 1942, Stassi acquired the adjoining lot No. 29, measuring 50 feet front on Rosa Avenue by a depth of 149 feet 6 inches, upon which the improvements known as 224 Rosa Avenue are located.
The acquisitions above mentioned show that when Stassi bought the two lots each had a sufficient frontage and an area of more than 6,000 square feet. In other words, when Stassi acquired the property, none of the restrictions in question had been violated.
At some subsequent time, which is not clearly established ¡by the record, Stassi erected side 'and rear fences on lot 28, which reduced the -frontage of the lot to 38 feet 6 inches, and the depth to 99 feet. This is the portion of lot 28 upon which 222 Rosa Avenue is located, and which Stassi agreed to sell to Oubre. We glean from the evidence that Stassi still owns lot 29, and that the lli/£ feet frontage taken from lot 28 has been added to lot 29.
There is no question, therefore, that if Oubre had complied with his agreement to purchase, and had taken title to what is left of lot 28, he would have acquired a portion of property upon which the improvements clearly violate two of the building restrictions as set forth in the petition.
Oubre’s testimony is that when his attorneys made an examination of the title they advised him not to consummate his purchase, as he might possibly expose himself to lawsuits brought at ■ the instance of owners of other property in the subdivision because of the violation of the conventional ■building restrictions bearing against lot 28.
We have held that building restrictions in a title to- real estate, which were undisclosed to a proposed purchaser, voided the contract to purchase. Couret v. Hopkins-Rhodes & Co., 13 Orleans App. 161; Giacoma v. Yochim, 13 La.App. 94, 126 So. 84; Hebert v. Succession of Vezoux, 12 La.App. 624, 126 So. 461; Bolian v. Porche, La.App., 149 So. 272; Williams v. Meyer, La.App., 29 So.2d 599.
One of appellant’s contentions is that Oubre agreed to purchase the property subject to the restrictions, and that, therefore, he is bound to take title in accordance with his contract to purchase. Appellee *600 counters with the argument that the full import of the restrictions were unknown to- him when he agreed to buy, and that he refuses to purchase 'property upon which are located improvements violative of the restrictions. Appellee’s position is that he had no' objection to talcing title subject to the restrictions, if the improvements had not been erected in violation thereof, but that whereas 222 Rosa Avenue is located upon an insufficient area of ground, he is apprehensive of litigation and unwilling to accept title. Appellee’s position, it seems to us, is justified.
Serious and intricate legal questions are presented by the defense that under the provisions of LSA-R.S. 9:5622 the property is now free and clear of restrictions which have been violated, which we feel should not be determined in this case. If we were to hold that the prescription has tolled for the trwo-year period, such a holding would not bind third persons not parties to this suit. It is certain that any decision herein made upon the question of prescription would not have the effect of ■foreclosing the right of a neighboring property owner in the subdivision, whoi feels himself aggrieved by the violation of the restrictions, to bring a suit against the owner of the portion of lot 28 in question. It may be that if the Vú/z foot frontage which was taken from lot 28 by Stassi still remains in his possession there has as yet been no violation of the restrictions, as Stassi owns the whole of lot 28. The interesting question would also' arise as to whether the violation would only occur when, if, and as Stassi parts with. that portion of lot 28 which Oubre agreed to buy. But aside from all that, the record does not demonstrate with any degree of clapity when the fences were erected, and we see nothing before us which could possibly serve as the basis for delving into or discussing the merits of the plea of prescription spoken of and urged by appellant.
It is also argued that the restrictions were violated in many instances by other owners in Oaklawn Subdivision. We are importuned by counsel to say that this has the effect of a general waiver or relinquishment of the restrictions by common consent or tacit acquiescence. We are not told how many parcels of property are embraced within the confines of the subdivision nor are we enlightened as to the number of violations. There is nothing presented to us which would warrant a holding that the violations were of such a general and continuous nature as to constitute a waiver of the restrictions by the-neighboring property owners. In Edwards v. Wiseman, 198 La. 382, 3 So.2d 661, 665, the Supreme Court said: “The question of whether or not there has been a general waiver or relinquishment of. the restrictive clauses by common consent or universal acquiescence due to multiple violations without protest or objection depends upon the facts of each case. * * * ”
The fact that Oubre made a visual inspection of the property before agreeing to buy is unimportant, as we are convinced that he was not cognizant of the nature of the restrictions, nor could he determine from a visual inspection that restrictions had been violated. The case of Hunley et ux. v. Ascani, 174 La. 712, 141 So. 385, tendered by appellant, has no applicability here.
Without difficulty, we readily conclude that Oubre, under the circumstances, had the absolute right to reject the title in accord with, the advice of his attorneys, and is, therefore, entitled to recover the amount of his deposit. A purchaser is not obligated to take a prof erred title which is doubtful, affected with a serious cloud, and so highly suggestive of future litigation.
But Oubre is not entitled to’recover anything beyond th.e deposit, and the trial judge erred in casting Stassi to return double the amount thereof. The $800 was no more or no less than earnest money.
R.C.C. ■ art. 2463 provides: “But if the promise to sell has been made with the giving' of earnest, each of the contracting parties is at liberty to recede from the promise; to' wit: he who has given the earnest, by forfeiting it; and he who has received it,' by returning the double.”
It must be remembered that Stassi did not recede from his promise, as he has *601 always been ready and willing to transfer the property to Oubre. The latter refused to. accept the property because of the title ■defects. Under that situation Stassi is not liable for double the deposit.
In Williams v. Meyer, supra [29 So.2d 601], we said that R.C.C. art. 2463:
“ * * * does not impose upon a vendor, who is unable to give a good title, the burden of returning double the deposit. It is only where a party voluntarily recedes from the promise without just cause that Tie 'becomes subject to such liability. Puyoulet v. Gherke, Orleans No. 7132 of this court, Opinion Book N'o. 53 (unreported). See Louisiana and Southern Digests; O’Connor v. Rawlins, Orleans No. 8263 of this court, Opinion Book No. 59 (unreported). See Louisiana and Southern Digests.
“The Supreme Court, in the case of Morgan & Lindsey v. Ellis Variety Stores, 176 La. 198, 145 So. 514, 520, said: ‘The giving of earnest money, as security for the carrying out of a promise to 'buy property, is like the posting of a forfeit, or liquidated damages, to be paid if the party promising to buy arbitrarily recedes from his promise; except that, in the giving of earnest money, each party to the contract is subject to the stipulated penalty if he arbitrarily recedes from the promise, or violates it. But the giving of earnest money to guarantee a promise to buy property does not subject the promisor to the penalty of forfeiture of the earnest money unless he violates his promise, or recedes from it arbitrarily, with the intention of forfeiting the earnest money, or without just cause for receding otherwise from his promise to buy.’ ”
The syllabus of our predecessors in Puyoulet v. Gherke, docket No. 7132, decided in 1917, recites: “The purchaser who refuses to accept the title tendered may not claim double the amount deposited by him; the forfeiture is for the benefit of him who asks for the execution of the sale, and not for the one who prays for its avoidance.”
It is ordered, adjudged, and decreed that the judgment appealed from, in favor of appellee, be reduced to the sum of $800, and as thus amended, and in all other respects, the judgment is affirmed. Appellant is to pay the costs of this appeal.
Amended and affirmed.