# The Maryland Coal Company *vs.* The Cumberland and Pennsylvania Railroad Company.

*Construction of a Covenant in a Deed.*

On the 23rd of October, 1863, the appellee which then owned a line of railroad from Cumberland to a point near Lonaconing purchased from the George's Creek Coal and Iron Company, its railroad about eight miles long, extending from a point near Lonaconing to Piedmont, West Virginia. The agreement or contract of purchase among other things, provided that notwithstanding the said sale to the appellee, the George's Creek Coal and Iron Company, "doth reserve to itself in full property, the sidings now connecting, or hereafter to connect, its mines and other works with the said principal line of railroad; and doth further reserve unto the said George's Creek Coal and Iron Company its lessees and grantees of its lands, or of any part or parts thereof, and to every of them, the full right and power to construct such other sidings to be connected with said principal line of railroad, as may from time to time be deemed expedient for the working of the mines of the lands now held by the said George's Creek Coal and Iron Company, on either side of the said railroad hereby agreed to be sold," &c. It also contained the following additional covenant: "And the said Cumberland and Pennsylvania Railroad Company further covenants and agrees to and with the said George's Creek Coal and Iron Company that the coals and other products of the mines on the lands now held by the George's Creek Coal and Iron Company, and all other matters tendered by the last named company, or its lessees, or any of them, to whom the said lands or any part thereof shall or may be demised, for transportation over the railroad now owned by the Cumberland and Pennsylvania Railroad Company, or over the railroad now contracted to be sold to the said company, or over any part or parts thereof, shall at all times hereafter, be carried and transported upon terms as favorable, with respect to prices for tolls and for transportation thereof, and all other facilities, as like articles are carried and transported, for or on account of the most favored customer of the Cumberland and Pennsylvania Railroad Company, it being the true intent of this indenture and of the parties hereto, that in reference to transportation over said railroad, and every of them, the George's Creek Coal and Iron Company, and the lessees of said company and every of them, shall stand in

every respect on the footing of the most favored customer of the Cumberland and Pennsylvania Railroad Company; and further that for tolls and transportation over the railroad now agreed to be sold by the George's Creek Coal and Iron Company to the Cumberland and Pennsylvania Railroad Company, or any part thereof, the former company, or its lessees, shall not be charged at higher rates than the said George's Creek Coal and Iron Company can or would charge for like transportation over said railroad or such part thereof, by its charter," &c.　Under its charter the George's Creek Coal and Iron Company had a right to charge two cents per ton per mile, while the appellee under its charter could charge six cents per ton per mile. By the Act of 1868, ch. 334, the appellee's charter was amended and its rates for toll and transportation were changed; the rates for distances of five miles and under being fixed at five cents per ton per mile; for distances over five miles and not exceeding ten miles four cents per ton per mile; and for all other distances three cents per ton per mile.　Subsequent to the purchase by the appellee of the railroad of the George's Creek Coal and Iron Company, the appellant became the owner in fee-simple, through certain mesne conveyances from the George's Creek Coal and Iron Company of a portion of its lands, and as such owner claimed to be entitled to have its coal transported by the appellee at the rates fixed by the covenant of the 23rd of October, 1863.　The appellee denied this claim and charged according to the rates prescribed by its charter as amended by the Act of 1868, ch. 334. On a bill filed by the appellant to obtain a decree enjoining the appellee from charging these rates and compelling it to carry the complainant's coal at the rates fixed by the agreement of the 23rd of October, 1863, it was HELD:

That the complainant was not entitled to have its coal transported at the rate fixed by the covenant in question; that the benefit of having the coal and other products of the George's Creek Coal and Iron Company transported at cheap rates by the defendant was clearly and unmistakably restricted to the George's Creek Coal and Iron Company and its lessees, and to them alone.

APPEAL from the Circuit Court for Allegany County; in Equity.

On the 23rd of October, 1863, the appellee which then owned a line of railroad, leading from Cumberland by way of Mount Savage and Frostburg, to a point near Lonaconing, purchased for the sum of $250,000 from the George's Creek Coal and Iron Company, its railroad, about eight

OCTOBER TERM, 1874.  345

Md. Coal Co. *vs.* Cumb. & Penn. R. R. Co.

miles long, extending from a point near Lonaconing to Piedmont, in West Virginia. The contract or agreement of purchase, contained the following covenant: "But the said George's Creek Coal and Iron Company, notwithstanding its covenant and agreement aforesaid, doth hereby reserve to itself in full property, the sidings now connecting, or hereafter to connect its mines and other works with the said principal line of railroad; and doth further reserve unto the said George's Creek Coal and Iron Company, the lessees and grantees of its lands, or of any part or parts thereof, and to every of them the full right and power at all times hereafter to construct such other sidings, to be connected with said principal line of railroad, as may from time to time be deemed expedient for the working of the mines of the lands now held by the said George's Creek Coal and Iron Company, on either side of the said railroad hereby agreed to be sold, subject, however, to the condition that all such sidings be constructed with due regard to the reasonable conveniences of use and safety of the said railroad, and are held subject to such reasonable regulations in regard to the use thereof, as the said Cumberland and Pennsylvania Railroad Company may, from time to time prescribe." It also contained the following additional covenant:

" And the said Cumberland and Pennsylvania Railroad Company further covenants and agrees, to and with the said George's Creek Coal and Iron Company, that the coals and other products of the mines on the lands now held by the George's Creek Coal and Iron Company, and all other matters tendered by the said last named company, or its lessees, or any of them, to whom the said lands or any part thereof shall or may be demised, for transportation over the railroad now owned by the said Cumberland and Pennsylvania Railroad Company, or over the railroad now contracted to be sold to the said company, or over any part or parts thereof, shall, at all times hereafter, be carried

346 MARYLAND REPORTS.

Md. Coal Co. *vs.* Cumb. & Penn. R. R. Co.

and transported upon terms as favorable with respect to prices for tolls and transportation thereof, and all other facilities as like articles are carried or transported for or on account of the most favored customer of the Cumberland and Pennsylvania Railroad Company, it being the true intent of this indenture, and of the parties hereto, that in reference to transportation over said railroad, and every of them, the George's Creek Coal and Iron Company, and the lessees of said company, and every of them, shall stand in every respect on the footing of the most favored customer of the Cumberland and Pennsylvania Railroad Company; and further, that for tolls and transportation over the railroad now agreed to be sold by the George's Creek Coal and Iron Company to the Cumberland and Pennsylvania Railroad Company, or any part thereof, the former company, or its lessees, shall not be charged at higher rates than the said George's Creek Coal and Iron Company can or could charge for like transportation over said railroad, or such part thereof by its charter, and further, that all and singular the provisions and stipulations aforesaid, in reference to transportation over the railroad of the George's Creek Coal and Iron Company, hereby agreed to be sold by the said company to the said Cumberland and Pennsylvania Railroad Company, and all and singular the provisions and stipulations hereinbefore made in reference to the construction and use of sidings to connect the mines on the lands of the said George's Creek Coal and Iron Company, with the said railroad, agreed to be sold as aforesaid, shall extend to the railroad constructed by said Cumberland and Pennsylvania Railroad Company over the lands of the George's Creek Coal and Iron Company, under license of the said last named Company, as hereinbefore recited as fully to every intent and purpose, as if the said railroad was part and parcel of the railroad now contracted to be sold by the said George's Creek Coal and Iron Company, or as if the

said provisions and stipulations had been herein repeated with special reference to the railroad so constructed as aforesaid."

Under its charter, granted by the Acts of 1835, chaps. 328 and 382, the George's Creek Coal and Iron Company, had a right to charge two cents per ton per mile, while the appellee under its charter, granted by the Act of 1849, ch. 469, could charge six cents per ton per mile. The appellee reported to the General Assembly at the session of 1864, its agreement of purchase, and obtained the passage of an Act (1864, ch. 53,) ratifying and confirming the transaction, and authorizing it to manage and control the road so purchased, as if it had been acquired and constructed under the provisions of its own charter. By the Act of 1868, ch. 334, the charter of the appellee was amended, and its rates for toll and transportation were changed; the rates for distances of five miles and under being fixed at five cents per ton per mile; for distances over five miles and not exceeding ten miles, four cents per ton per mile; and for all other distances, three cents per ton per mile. This Act contained a proviso, saving the rights of the George's Creek Coal and Iron Company, under the agreement of the 23rd of October, 1863. The rates for toll and transportation, since the passage of this Act, have accordingly been regulated by it; the George's Creek Coal and Iron Company being charged according to the terms of the agreement aforesaid, two cents per ton per mile; and all other persons and corporations being charged the specified rates graduated by the distance of transportation as prescribed by the Act.

On the 30th of December, 1864, the George's Creek Coal and Iron Company sold and conveyed to the Savage Mountain Coal Company, three hundred and fifteen acres of its coal lands, with the appurtenances. On the 10th of May, 1872, it also sold to Henry G. Davis, four parcels of land, containing in the aggregate one hundred and fifty

348          MARYLAND REPORTS.

Md. Coal Co. *vs.* Cumb & Penn. R. R. Co.

acres of land, with all and singular the appurtenances. These several pieces of land amounting in all to four hundred and sixty-five acres, by mesne conveyances became the property in fee simple of the appellant, which held them at the time of filing its bill of complaint. These lands lay near Lonaconing, and near to the line of the railroad purchased of the George's Creek Coal and Iron Company by the appellee, and the only means of transporting the coal from them, either to Piedmont or Cumberland, was over said road. Upon all coal shipped by the appellant to Piedmont, the appellee required it to pay four cents per ton per mile, and three cents per ton per mile on coal shipped to Cumberland. The appellant claimed the right to have the coal from said lands transported over this road at two cents per ton per mile, the rate fixed by the agreement of the 23rd of October, 1863, but the appellee refused to carry it for less than its own charter rates. The appellant thereupon on the 23rd of July, 1873, filed its bill asking that a decree might be passed requiring the appellee "to execute and perform the covenants and stipulations made and entered into by it for the benefit of the said lands" in and by the aforesaid agreement of the 23rd of October, 1863, and enjoining it from charging four cents per ton per mile, and compelling it to carry the complainant's coal mined on the lands aforesaid, over the railroad purchased from the George's Creek Coal and Iron Company, at the rate of two cents per ton per mile. On the 20th of March, 1874, the Court, (PEARRE, J.,) passed a decree dismissing the bill. From this decree the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and GRASON, J.

*William Walsh* and *Thomas J. McKaig*, for the appellant.

Md. Coal Co. *vs.* Cumb. & Penn. R. R. Co.

[The argument of the appellant having been addressed to points which were not passed upon by the Court, is omitted.—REP.]

*John P. Poe* and *J. H. Gordon,* for the appellee.

The only question for the decision of this Court, is, whether the covenant made by the defendant with the George's Creek Company, and in express terms for the benefit of the George's Creek Company, and its lessees, shall be extended by construction, and made to include the complainant, who holds as grantee in fee simple of the George's Creek Company, other lands than those conveyed to the defendant, and with which the railroad, the thing conveyed, is not connected.

In all cases where the acts, agreements or covenants of parties come before judicial tribunals for consideration and decision, the universal rule is to give such effect to them as the parties to them intended them to have. 2 *Parsons on Con.,* 499, 500, 501, 502, 503, *and notes; Browning vs. Wright,* 2 *Bos. & Pul.,* 20, 22, *&c.; Cooley's Cons. Lim.,* 55; *Broom's Maxims,* 477, 478; *Alexander vs. Worthington,* 5 *Md.,* 471; *Cantwell vs. Owens,* 14 *Md.,* 215.

Where the law has settled and defined the meaning of words, they must be understood to be used in the sense which the law attaches to them. 2 *Parsons on Con.,* 494, 495, 499 *and note,* 501 *note (t;) Gill vs. Shelley,* 2 *Russ. & Mylne,* 341; *Wilkinson vs. Adam,* 1 *Ves. & B.,* 448; *Cooley's Con. Lim.,* 55.

The covenant in this case was made by the appellee in favor of the George's Creek Company, and its *lessees,* by express words, which have a clear and well defined meaning, and therefore there is no room for construction, unless the other parts of the instrument taken with this covenant show a different intention. *Cooley's Con. Lim.,* 55, *and note.*

The instrument taken as a whole shows clearly that the defendant did not intend this covenant to operate in favor

350    MARYLAND REPORTS.

Md. Coal Co. *vs.* Cumb. & Penn. R. R. Co.

of the grantees in fee. A critical examination of the instrument shows that it was prepared by a skillful conveyancer who knew the technical use of the words he employed. He used the words *lessees* and *grantees* both in the first part of the instrument, reserving to the George's Creek Co., its connections between the mines and the railroad, and the right to make further connections ; and leaves out the word grantees in the covenant in which the defendant agrees to carry coal at the low rate provided by the charter of the George's Creek Co. This omission must therefore have been by intention, and for the purpose of limiting the obligation of the defendant to that price only when it carried for the George's Creek Co., and its tenants, who paid it a royalty for the privilege of working its mines. "*Expressio unius est exclusio alterius.*" *Broom's Legal Maxims*, 505 ; *Merrill vs. Frame*, 4 *Taunton*, 329 ; *Line vs. Stephenson*, 5 *Bing., N. C.*, 183 : *Alexander's Brit. Stat.*, 337 ; *Nokes' Case*, 4 *Coke*, 80 ; *Frost vs. Raymond*, 2 *Caine's Rep.*, 192 ; *Browning vs. Wright*, 2 *Bos. & Pul.*, 26 ; 2 *Bacon's Abr. Covenant, B*, 555.

The complainant however contends that the covenant was made for the benefit of all the coal lands owned by the George's Creek Co., at the time it sold the railroad, and therefore it was intended to enure to the benefit of all parties to whom the lands then held by the George's Creek Co. or any part of them might be conveyed by lease or grant in fee simple. But where is the evidence of any such intention? Not in the deed, for that limits the benefit to the George's Creek Co., and its lessees, as effectually as if it had said in so many words that its benefits should not enure to any purchaser in fee of any of said lands.

[The argument of the appellee upon the points not decided by the Court, is omitted. Rep.]

GRASON, J., delivered the opinion of the Court.

Assuming, for the purposes of this case, that the covenant, entered into by the appellee and the George's Creek

Coal and Iron Company, is such an one as would, if unrestricted, run with the land and pass therewith to the grantees of the covenantee, (a question we deem it unnecessary to decide in this case,) we think the contract itself very clearly confines the benefit of the covenant to the George's Creek Coal and Iron Company and *its lessees* only. The covenant is in the words following: "And the said Cumberland and Pennsylvania Railroad Company further covenants and agrees to and with the said George's Creek Coal and Iron Company, that the coals and other products of the mines on the lands now held by the George's Creek Coal and Iron Company, and all other matters tendered by the last named Company, or its lessees, or any of them, to whom the said lands, or any part thereof shall or may be demised, for transportation over the railroad, now owned by the Cumberland and Pennsylvania Railroad Company, or over the railroad now contracted to be sold to the said company, or over any part or parts thereof, shall, at all times hereafter, be carried and transported upon terms as favorable, with respect to prices for tolls and for transportation thereof, and all other facilities, as like articles are carried and transported, for, or on account of, the most favored customer of the Cumberland and Pennsylvania Railroad Company, it being the true intent of this indenture and of the parties hereto, that, in reference to transportation over said railroad, and every of them, the George's Creek Coal and Iron Company, and the lessees of said company and every of them, shall stand, in every respect, on the footing of the most favored customer of the Cumberland and Pennsylvania Railroad Company; and further, that for tolls and transportation over the railroad now agreed to be sold by the George's Creek Coal and Iron Company to the Cumberland and Pennsylvania Railroad Company, or any part thereof, the former company, or its lessees, shall not be charged at higher rates than the said George's Creek Coal and Iron Com-

352          MARYLAND REPORTS.

Md. Coal Co. *vs.* Cumb. & Penn. R. R. Co.

pany, can or could charge for like transportation over said railroad, or such parts thereof by its charter," &c.

In the interpretation of written contracts it is the duty of Courts to ascertain, if possible, the intention of the parties, as manifested by the terms of the instrument. If the intention of the parties is plainly manifest upon the face of the instrument there is no room for interpretation, and there is nothing left for the Courts but to carry into effect the intention of the parties so ascertained, unless prevented from doing so by public policy or some established principle of law.    The rule is well settled that, in ascertaining the meaning of words in a deed or other written instrument, technical words must be given their technical meaning and signification.  *Mitchell vs. Mitchell,* 2 *Gill,* 238.    Applying these rules, first, that the intent is to govern ; and secondly, that technical words must be given their technical meaning, we think that all difficulty is removed from this case.    The benefit of having coal and other products of the lands transported at cheap rates of tolls by the Cumberland and Pennsylvania Railroad Company; is, in plain and unmistakable terms, restricted to the George's Creek Coal and Iron Company and its *lessees,* and to them alone.    In three different parts of the covenant the same restriction appears, and the inference is irresistible that by specifying this particular class, to which the benefit of the covenant was to extend, the parties to the contract intended to exclude every other class.    It was certainly to the interest of the appellee to restrict the benefit of cheap tolls to as small a class as possible, and it may well be conceived that the George's Creek Coal and Iron Company was unwilling to place its *grantees* in such position, by extending to them the benefit of the covenant, as to enable them to compete successfully with it in the coal market.    But the intention of the parties to restrict the benefit of the covenant to the George's Creek Coal and Iron Company and its *lessees* is, if possible,

made more manifest by the terms of the reservation to it of the sidings connecting its mines and works with the railroad and which is as follows: "but the said George's Creek Coal and Iron Company, notwithstanding its covenant and agreement aforesaid, doth hereby reserve to itself, in full property, the sidings now connecting, or hereafter to connect, its mines and other works with the said principal line of railroad; and doth further reserve unto the said George's Creek Coal and Iron Company, its lessees *and* grantees of its lands, or of any part or parts thereof, and to every of them, the full right and power to construct such other sidings to be connected with said principal line of railroad," &c. It will be observed that, when the parties to the deed desired to include the *grantees* of the George's Creek Coal and Iron Company within the class to be benefited by a reservation or covenant, apt and technical words, to so include and describe them, were made use of in the deed. The fact that this class was expressly named in the reservation with respect to the sidings, and omitted in the covenant in respect to transportation and tolls, furnishes the strongest presumption that the parties to the contract did not intend the benefit of the covenant to be extended to the *grantees* of the George's Creek Coal and Iron Company, but that they were designedly excluded from it. The intent of the parties to the contract being thus manifested by clear and express language, there can be no *implication* to the contrary.

It was perfectly competent for the parties to have entered into a covenant, which, if unrestricted, would have run with the land; but they have chosen to provide that it shall not run except in favor of *lessees*. There is neither allegation nor proof of any mistake in the contract.

As the parties were competent to contract, and the contract they have made is plain and unambiguous, the Court can do nothing more than decide what are its meaning and effect. The contract as made by the parties, has reserved

the privilege to the George's Creek Coal and Iron Company, its grantees, *and* lessees to connect their lands by sidings with the railroad, and reserved the benefit of cheap transportation over the railroad to the last named company and its *lessees* alone, and as the appellant does not come within the class to which this benefit is reserved, the decree appealed from must be affirmed.

It is proper to state, in justice to the Court, that the delivery of this opinion has been delayed until this time by the sickness of some of the Judges who sat in the case, and the unavoidable absence of others.

*Decree affirmed.*

(Decided 4th February, 1875.)

STEWART, J., dissented.